UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

G.B. o/b/o B.S., a minor,

                      Plaintiff,

    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                      Defendant.

----------------------------------------X

                              12 Civ. 441

                              OPINION

A P P E A R A N C E S:


        Attorneys for Plaintiff

        SKYER & ASSOCIATES
        276 Fifth Avenue
        New York, NY  10001
        By:  Jesse Cole Cutler, Esq.
             Samantha Renee Bernstein, Esq.


        Attorney for Defendant

        NEW YORK CITY LAW DEPARTMENT
        100 Church Street
        New York, NY  10007
        By:  Andrew James Rauchberg, Esq.

**Sweet, D.J.**

Plaintiff G.R. ("G.R." or the "Plaintiff") has filed a complaint on behalf of her son B.S. against the New York City Department of Education (the "DOE" or the "Defendant") and seeks a temporary restraining order, preliminary injunctive relief and damages, pursuant to Fed. R. Civ. P. 65, requiring the DOE and its agents to have B.S. remain enrolled at the Bronxville Elementary School ("Bronxville Elementary") pending final resolution of this action.  Upon the facts and conclusions set forth below, B.S.'s pendency rights do not require him to remain enrolled at his current brick-and-mortar school, but B.S.' May 6, 2011 individualized education program ("IEP") remains in effect. Accordingly, the Plaintiff's motion is granted in part and denied in part, and the DOE will provide B.S. with an educational plan that provides services comparable to his May 6 IEP.

**Prior Proceedings**

On January 19, 2012, the Plaintiff filed her complaint on behalf of B.S. pursuant to the Individuals with

1

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 et. seq., based on the Defendant's alleged failure to comply with the pendency provisions of the IDEA, New York State Education Law §§ 4401 et. seq. and the regulations promulgated thereunder.  That same day, the Plaintiff submitted an order to show cause as to why an injunction should not be issued pursuant to Fed. R. Civ. P. 65, and the Plaintiff's motion was heard and marked fully submitted on January 25, 2012.

**The Facts**

G.R. is the mother of B.S., an 11 year old child who has been diagnosed with autism and is currently attending a special education class at Bronxville Elementary.  B.S. and his family resided in Bronxville, NY until the end of the 2010-2011 school year.  Beginning in 2005 and through the end of the 2010-2011 school year, the Bronxville Union Free School District developed IEPs for B.S., placing him at Bronxville Elementary.

For the 2010-2011 school year and the summer of 2011, B.S. attended a special class at Bronxville Elementary for students with autism.  The class had a 6:1:3 staffing

2

ratio and utilized an Applied-Behavior-Analysis approach to instruction.  B.S. received daily mainstreaming opportunities as well as social skills training through an extended school day program for four days per week along with related services.  B.S.'s program of study at Bronxville Elementary was most recently mandated by his May 6, 2011 IEP.

       In April 2011, G.R. wrote a letter to the New York City School District's Committee on Special Education ("CSE") stating that the family would soon move to Queens and requesting a meeting to discuss B.S.' educational program for the upcoming school year.  According to the Plaintiff, G.R. received a phone call from a CSE staff member in May informing her that the school district would do nothing for B.S. until he became a resident of New York City.  B.S.' mother, after moving to New York City, wrote again to the CSE at the beginning of August, reiterating her request for a meeting.

       According to the Plaintiff, G.R. received a phone call from a Comparable Service Plan team at the DOE informing her that the DOE would be recommending a 6:1:1 autism program where B.S. would be segregated.  The DOE convened a meeting

on August 15, 2011 to recommend special education services within New York City for B.S. for the 2011-2012 school year. G.R. attended and participated in the August 15 meeting and was told that the 6:1:1 programs had no opportunities for mainstreaming, no extended school day services and that a different teaching methodology was used in the classroom.

When G.R. received a placement notice recommending that B.S. attend the 6:1:1 program at P.S. 993, a school in Jamaica, Queens, G.R. visited P.S. 993, observed the recommended classroom and spoke to the teacher.  G.R. determined that P.S. 993 was not appropriate for B.S. nor comparable to Bronxville Elementary.  At the start of the 2011-2012 school year, G.R. decided to enroll B.S. at Bronxville Elementary, notwithstanding the family's move to Queens.  Transportation from Queens to Bronxville was initially provided at private expense.

Pursuant to the IDEA, G.R. filed an impartial hearing request on September 19, 2011, challenging the DOE's recommendation for B.S. and invoking B.S.' "pendency rights" under the IDEA, which would allow B.S. to remain at his current placement at the DOE's expense until administrative

4

proceedings had been completed. A "pendency hearing" was held before an Impartial Hearing Officer ("IHO") on October 5, 2011, and, on October 24, 2011, the IHO found that Bronxville Elementary was B.S.' pendency placement under the law and that the DOE was required to fund B.S. at Bronxville Elementary until the substantive issues in the parent's complaint had been adjudicated. The substantive hearing is currently pending before the IHO.

According to the Plaintiff, the DOE refused to comply with the IHO's order, failed to request a stay of the order and instead sent a letter to G.R.'s attorney stating that it would consider appealing that order to the Office of State Review and would not implement those parts of the order that it chose to appeal. G.R. received a copy of the DOE's petition to the State Review Officer ("SRO") on November 28, 2011. The petition alleged that, because the family had voluntarily moved to New York City, the proper placement for purposes of pendency was the 6:1:1 class at P.S. 993, not Bronxville Elementary. On December 23, 2011, the SRO issued a decision in which he overturned the IHO's finding that Bronxville Elementary was B.S.' pendency placement. The SRO also found that the 6:1:1 program was not a comparable

5

service plan, but that the 6:1:1 class "will be comparable with the additional provision that the student be assigned the services of a 2:1 paraprofessional." On January 20, 2012, the Comparable Services Plan created for B.S. on August 15 was updated to reflect the changes ordered by the SRO.

On November 14, 2011, following an IEP meeting attended by G.R., the DOE drafted a new IEP for B.S, placing him in a class at P.S. 256, a community school in New York City. According to the DOE, if B.S. attends P.S. 256, he will receive a placement in a classroom of six students total with one teacher and one paraprofessional, a paraprofessional assigned to the student and one other student, occupational therapy, speech and language therapy, opportunities to attend extended day programs to the extent that they are offered to all students at P.S. 256 and opportunities to interact to the extent possible with non-disabled peers. According to the DOE, this placement recommendation was different from the August 15, 2011 Comparable Service Plan because G.R. rejected P.S. 993. To date, B.S.' parents have not complained about the November 2011 IEP.

Following the IHO's October 24 decision, B.S. obtained transportation from Queens to Bronxville at the DOE's expense, and B.S. remains enrolled at Bronxville Elementary and continues to commute in DOE provided transportation.  On January 19, 2012, G.R. filed the pending motion for a temporary restraining order and preliminary injunction, claiming that "absent an immediate order by the Court," B.S. will be dismissed from Bronxville Elementary on February 1, 2012 because no funding mechanism is currently in place to cover the cost of tuition.

On January 20, 2012, the Plaintiff entered into a "Tuition Contract" with the Bronxville Union Free School District in which G.R. expressed her understanding that the 2011-2012 tuition rate was $80,826 and "that non-payment of tuition will result in removal of the student from school rolls, with due notice to the school principal and the parents."  In the contract, the Plaintiff agreed "that the tuition, less the amount paid by Parent(s) for school taxes for property owned within the School District, will be paid on a monthly basis, in advance, per the schedule attached as part of this Agreement."

7

**The Individuals with Disabilities Education Act,
Individualized Education Programs, and Administrative Review
Procedures**

The IDEA, 20 U.S.C. § 1400 et seq., requires states
receiving federal funding to provide children with
disabilities with a free and appropriate public education
("FAPE").  20 U.S.C. § 1412(a)(1)(A); Gagliardo v. Arlington
Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007).  Under
the IDEA, a FAPE must provide "special education and related
services tailored to meet the unique needs of a particular
child" that are "'reasonably calculated to enable the child
to receive educational benefits.'"  Walczak v. Fla. Union
Free Sch. Dist., 142 F.3d 119, 112 (2d Cir. 1998) (quoting
Bd. of Educ. v. Rowley, 458 U.S. 176, 207, 102 S.Ct. 3034, 73
L.Ed.2d 690 (1982)).

The procedures prescribed in the Act require the
school district to develop an annual IEP for the child that
is tailored to the disabled student's needs.  20 U.S.C. §
1414(d).  The IEP is a written program of instruction that
"sets out the child's present educational performance,
establishes annual and short-term objectives for improvements
in that performance, and describes the specially designed

8

instruction and services that will enable the child to meet
those objectives." Honig v. Doe, 484 U.S. 305, 311, 108
S.Ct. 592, 98 L.Ed.2d 686 (1988).  Parents who believe that
the state has failed to provide their child with a FAPE "may,
at their own financial risk, enroll the child in a private
school and seek retroactive reimbursement for the cost of the
private school from the state." Gagliardo, 489 F.3d at 111;
20 U.S.C. § 1412(a)(10)(C)(ii).  The IDEA also requires that
the special education program be provided in the least
restrictive environment, meaning the student is to be
educated with non-disabled peers to the "maximum extent
appropriate."  20 U.S.C. § 1412(a)(5); Walczak, 142 F.3d at
132.  Only "when the nature or severity" of a child's
disability is such "that education in regular classes with
the use of supplementary aids and services cannot be achieved
satisfactorily" should a child be segregated.  20 U.S.C. §
1412(a)(5)(A).

     New York State has implemented a two-tiered system
of administrative review for parents who are dissatisfied
with their child's placement.  First, parents may obtain an
impartial hearing before an IHO.  N.Y. Educ. L. § 4404(1)(a).
Second, the decision of the IHO can subsequently be appealed

to an SRO.  N.Y. Educ. L. § 4404(2).  After exhausting this
two-step administrative process, any party still dissatisfied
may bring a civil action in state or federal court.  N.Y.
Educ. L. § 4404(3); 20 U.S.C. § 1415(i)(2)(A).

## The Preliminary Injunction Standard

        A court may issue a preliminary injunction only if
the movant has demonstrated "either (a) a likelihood of
success on the merits or (b) sufficiently serious questions
going to the merits to make them a fair ground for litigation
and a balance of hardships tipping decidedly in the
[plaintiff]'s favor."  Salinger v. Colting, 607 F.3d 68, 79-
80 (2d Cir. 2010) (alteration in original) (internal
quotations omitted); see also Amoco Prod. Co. v. Village of
Gambell, 480 U.S. 531, 546 n.12, 107 S.Ct. 1396, 94 L.Ed.2d
542 (1987) ("The standard for a preliminary injunction is
essentially the same as for a permanent injunction with the
exception that the plaintiff must show a likelihood of
success on the merits rather than actual success.").  The
plaintiff must also demonstrate that he is likely to suffer
"irreparable injury in the absence of an injunction."

Salinger, 607 F.3d at 80 (quoting Winter v. Nat. Res. Def. Council, 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)).  Irreparable injury is one for which a "monetary award cannot be adequate compensation." Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) (internal quotations omitted). A court may not "simply presume" irreparable injury, Salinger, 607 F.3d at 82, but must "actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits." Salinger, 607 F.3d at 80.  Granting a preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997).

**The Plaintiff's Pendency Rights Do Not Require Placement At Bronxville Elementary**

The IDEA's "pendency" or "stay-put" provision provides that, where the parents and school district disagree, the student shall remain in the then-current educational placement of the child during the pendency of any administrative proceedings.  See 20 U.S.C. § 1415(j); N.Y.

11

Educ. Law §§ 4404(4), 4410(7)(c); 34 C.F.R. § 300.518(a); 8
N.Y.C.R.R. § 200.5(m).  The purpose of the pendency provision
is to provide stability and consistency in the education of
the disabled student and requires the school district to
maintain the child in his then-current educational placement
and thus preserve the status quo.  See Arlington Cent. Sch.
Dist. v. L.P., 421 F. Supp. 2D 692, 696 (S.D.N.Y. 2006).  The
Plaintiff's complaint requests that the Court issue a
temporary restraining order and preliminary injunction
ordering the DOE to implement B.S.' pendency rights by
ordering B.S. to remain at the brick-and-mortar Bronxville
Elementary and enter a judgment ordering equitable relief and
damages to G.R. as a result of the failures or delay in
enforcing B.S.' pendency rights.

        The Plaintiff, in support of her position that
B.S.' pendency rights allow him to remain at Bronxville
Elementary during the pendency of his administrative
proceedings, has cited a July 17, 1986 letter issued by the
United States Department of Education Office of the Assistant
Secretary for Special Education and Rehabilitative Services.
According to the Plaintiff, this letter establishes that when
"a child moves with his parents to a new school district"

12

within the same state, the student's existing "IEP has the
imprimatur of the [State Educational Agency] and carries a
presumption of correctness. . . . To allow a new [Local
Education Agency] to place the child in a regular education
program or provide an interim IEP without parental consent
would defeat the purpose of the statutory provision – to
guarantee a coherent educational experience for a disabled
child until conclusion of review of a contested IEP."
Inquiry of Rieser, OSEP Policy Letter, July 17, 1986 (U.S.
Dep't Educ. 1986) (internal quotation marks and citations
omitted). Accordingly, the Plaintiff contends that, during
the pendency of the administrative proceedings, the DOE is
bound to maintain the current level of education and related
services in Bronxville even though the parent moved from
Bronxville to Queens.

Additionally, G.R. contends that the SRO's reversal
of the IHO's finding that Bronxville Elementary was B.S.'
pendency placement was arbitrary and baseless. According to
the Plaintiff, because the merits of B.S.' case are currently
pending before the IHO, the SRO had no evidence or testimony
before him to make a ruling. G.R. maintains that the SRO's

13

decision was contrary to congressional intent and the express purposes of IDEA's pendency provision.

In further support of her request for a preliminary injunction, the Plaintiff has cited Michael C. ex rel. Stephen C. v. Radnor Township School District, 202 F.3d 642 (3d Cir. 2000). In that case, the father of a disabled student brought an action against a school district of the Pennsylvania Department of Education seeking reimbursement for tuition costs incurred while the student attended a private school. The Third Circuit held, inter alia, that when the father unilaterally removed the student from a private school for disabled children upon moving to Pennsylvania, the Pennsylvania school district was not required by IDEA's pendency or stay-put provision to place the child in a private, segregated school. G.R. cites this case for the contrast the Third Circuit draws between Michael C., in which the student moved from Washington, D.C. to Pennsylvania, and a case involving a student who moves intrastate:

> We note that this scenario is distinguishable from the situation in which a parent unilaterally removes a child previously determined to be disabled from one school

14

district and moves the child to another school district
in the same state.  In the latter situation, the child's
educational placement has already been determined in
accordance with state procedures and with the consent of
the child's parents, and his or her IEP bears the
imprimatur of that state.  See Inquiry of Rieser, OSEP
Policy Letter, July 17, 1986 (U.S. Dep't Educ. 1986).

Michael C., 202 F.3d at 651 n.7.  The Plaintiff contends that

because B.S. moved from Bronxville to Queens, an intrastate

relocation, B.S.' educational placement has already been

determined in accordance with New York State procedures and

parental consent, B.S.' May 6 IEP is still in effect and the

DOE must maintain the educational services at Bronxville

Elementary.


As a general matter, although the IDEA does require

that a student shall remain in his or her "then-current

educational placement" while administrative proceedings are

pending, 20 U.S.C. § 1415(j), this pendency provision does

not require that B.S. remain at a specific brick-and-mortar

school.  Although not defined by the statute, the phrase

"then current placement" has been found to mean the last

agreed upon placement at the moment when the due process

proceeding is commenced.  See Arlington Cent. Sch. Dist., 421

F. Supp. 2d at 696 (citing Murphy v. Arlington Cent. Bd. of

Educ., 86 F. Supp. 2d 354, 359 (S.D.N.Y. 2000)).   Pendency,
however, does not require that a student remain in a
particular site or location.   See Concerned Parents and
Citizens for the Continuing Educ. at Malcolm X Pub. Sch. 79
v. N.Y.C. Bd. of Educ., 629 F.2d 751, 753 (2d Cir. 1980)
("[W]e nonetheless believe that the term 'educational
placement' refers only to the general type of educational
program in which the child is placed."); see also A.W. v.
Fairfax Co. Sch. Bd., 372 F.3d 674, 682 (4th Cir. 2004)
("Consideration of the structure and the goals of the IDEA as
a whole, in addition to its implementing regulations,
reinforces our conclusion that the touchstone of the term
'educational placement' is not the location to which the
student is assigned but rather the environment in which
educational services are provided."); White v. Ascension
Parish Sch. Bd., 343 F.3d 373, 379 (5th Cir. 2003)
("'Educational placement', as used in the IDEA, means
educational program — not the particular institution where
that program is implemented.").

        The authorities upon which the Plaintiff relies do
not mandate that B.S. remain at Bronxville Elementary.   The
Michael C. decision addresses the issue of a student who

moves from one state to another state, holding that the student is not entitled to have the new school district adopt and implement the IEP that was developed out of state. The footnote upon which the Plaintiff relies expresses only that, unlike students who relocate from out of state, students who relocate from within the state bring with them an IEP developed with the imprimatur of the state. In other words, until a new IEP is developed, the DOE is obligated to abide by B.S' existing IEP in providing B.S. a FAPE. It is not necessarily the case that B.S.' educational program can only be provided at Bronxville Elementary.

The Plaintiff also relies upon a July 17, 1986 letter from the Department of Education Office of the Assistant Secretary for Special Education and Rehabilitative Services. The final paragraph of this letter states as follows:

> In summary, we conclude as follows: When a handicapped child transfers from one school district to another within a State, the receiving [Local Education Agency] must maintain the child's "then current educational placement" during the pendency of any reevaluation or administrative and judicial proceedings. EHA [the previous name of IDEA] does not require maintaining the placement in the former school district. However, the new [Local Education Agency] must provide the complete

17

program of special education and related sevices [sic]
as described in the child's IEP, including the goals and
objectives and the educational program option if that
type of placement (e.g., regular class, self-contained
class, residential placement) is so intertwined with the
goals and objectives that it is a necessary component of
the program described in the IEP.

Inquiry of Rieser, OSEP Policy Letter, July 17, 1986 (U.S.
Dep't Educ. 1986).  As such, while the school district "must
provide the complete program of special education and related
se[r]vices as described in the child's IEP," this letter
acknowledges that the IDEA "does not require maintaining the
placement in the former school district."

     When a student with a disability moves from one
school district to another within New York State, both
federal and state law entitles the student to receive from
the new district "services comparable to those described in
the previously held IEP."  8 N.Y.C.R.R. § 200.4(e)(8)(i); see
also 20 U.S.C. § 1414(d)(2)(C)(i)(I); 34 C.F.R. § 300.323(e).
Accordingly, while the IDEA obligates the DOE to provide B.S.
with an educational placement that is comparable to his May 6
IEP, the DOE is not compelled to continue B.S.' enrollment at
his current brick-and-mortar placement, Bronxville
Elementary.

18

**The Evidentiary Record Does Not Establish That The DOE Has
Provided B.S. With A Comparable Educational Services Plan**

Although the DOE is not obligated to continue B.S.'
enrollment at Bronxville Elementary, the IDEA does require
that the DOE provide B.S. with services comparable to those
described in his previous IEP while his new IEP is being
developed.  Here, the evidentiary record fails to establish
that an adequate plan for providing B.S. with comparable
services has been developed.

In his December 23, 2011 opinion, the SRO reviewed
both the Bronxville Elementary program and the Comparable
Services Plan then being offered by the DOE, ultimately
concluding that, if the DOE, in addition to offering the
6:1:1 special class, provided B.S. with the services of a 2:1
paraprofessional, the DOE's proposed program would be
comparable to the program at Bronxville Elementary.  It is
the district court's obligation to engage in an independent
review of the administrative record and evaluate the SRO's
decision based on a "preponderance of the evidence," <u>Mrs. B.
v. Milford Bd. of Educ.</u>, 103 F.3d 1114, 1120 (2d Cir. 1997),

19

recognizing that the Supreme Court has cautioned that such
review "is by no means an invitation to the courts to
substitute their own notions of sound educational policy for
those of the school authorities which they review." Rowley,
458 U.S. at 206.  District courts, however, are not obligated
to blindly approve the determinations of the administrative
officers, and this Court has reversed the SRO where it has
found that the SRO's decision was not "thorough and careful."
See, e.g., E.S. v. Katonah-Lewisboro Sch. Dist., 742 F. Supp.
2d 417, 442-44 (S.D.N.Y. 2010) (reversing SRO ruling for
"fail[ing] to take into account important information"); M.H.
v. N.Y. City Dep't of Educ., 712 F. Supp. 2d 125, 154-55
(S.D.N.Y. 2010) ("the SRO's determination cannot be
considered 'thorough and careful' because the SRO considered
only [the student's] annual academic goals, whereas the IHO
based her decision on both the annual academic goals and the
short-term objectives").

         In his December 23 opinion, the SRO addressed the
DOE's appeal "from an interim decision of an impartial
hearing officer determining respondent's (the parent's) son's
pendency (stay put) placement during a due process proceeding
challenging the appropriateness of the petitioner's

recommended educational program for the student for the 2011-2012 school year." Opinion of State Review Officer, N.Y. Dep't of Educ., No. 11-158 (Dec. 23, 2011), at 1. In his opinion, the SRO relied heavily on the transcript from the October 5 hearing before the IHO, describing B.S.' program at Bronxville Elementary and comparing it to the Comparable Services Plan offered by the DOE. Opinion of SRO, at 7-9. However, it is unclear as to how the SRO arrived at his conclusion that "the 6:1+1 special class will be comparable with the additional provision that the student be assigned the services of a 2:1 paraprofessional." Opinion of SRO, at 8. No citation to the evidentiary record is included to support this statement. Additionally, it is important to note that the substantive merits of B.S.' case remain pending before the IHO. As such, the present evidentiary record before the Court fails to establish that the educational services the DOE is offering B.S. are indeed comparable to his previous IEP.

Further complicating matters is the fact that the DOE has proposed more than one educational program. While the August 15 IEP described a program at P.S. 993 in Jamaica, Queens, a subsequent November 14 IEP described a different

21

program at P.S. 256, a community school in New York City. The SRO's report appears to address only the August 15, 2011 IEP, as this is the only IEP mentioned in the report and the only one that would have been in existence at the time of the IHO's October 5 pendency hearing.  With multiple IEPs in existence, it is not clear which program the DOE is recommending for B.S., nor does the evidentiary record contain any information concerning the comparability of the program at P.S. 256.

Although the Second Circuit has cautioned "that IDEA's statutory scheme requires substantial deference to state administrative bodies on matters of educational policy," Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 191 (2d Cir. 2005), the appeals process would be rendered superfluous and academic if the Court were simply to "rubber stamp" administrative decisions.  Cf. Walczak, 142 F.3d at 129.  At the present time, the evidentiary record does not establish that the DOE has provided B.S. with a plan for obtaining educational services comparable to those he currently receives at Bronxville Elementary.

**Conclusion**

22

Based on the facts and conclusions set forth above, the Plaintiff's motion is denied in part and granted in part. Although B.S. does not have pendency rights in his current brick-and-mortar placement at Bronxville Elementary, B.S. is entitled to receive educational services that are comparable to those described in his IEP dated May 6, 2011. Accordingly, the DOE is hereby ordered to provide educational services for B.S. comparable to his May 6, 2011 IEP.

It is so ordered.

New York, NY
January 3/, 2012

ROBERT W. SWEET
U.S.D.J.

23